# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JAMES R. MERCER, JR.,

                              Plaintiff,

        - v -                                    Civ. No. 9:13-CV-840
                                                        (DNH/RFT)

APS HEALTHCARE, INC., *in its individual and official
capacity;* MARIKA V. WINKLER*, APS Medical Reviewer,
in her individual and official capacity*; JONATHAN S.
STRENIO, *APS Medical Director, in his individual and
official capacity*; CHRISTINA M. MISA, *Regional Medical
Director, in her individual and official capacity*; GERALD R.
AMATUCCI, *Regional Medical Director,in his individual
and official capacity*,

                              Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

JAMES R. MERCER, JR.
*Pro se* Plaintiff
87-C-0688
Cayuga Correctional Facility
P.O. Box 1186
Moravia, NY 13118

HON. ERIC T. SCHNEIDERMAN              JOSHUA L. FARRELL, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for State Defendants
The Capitol
Albany, NY 12224

CARTER, CONBOY, CASE, BLACKMORE,        WILLIAM C. FIRTH, ESQ.
MALONEY & LAIRD, P.C.
Attorney for APS Defendants
20 Corporate Woods Boulevard
Albany, NY 12211

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff James R. Mercer, Jr., while incarcerated at Cayuga Correctional Facility, commenced this civil rights action, pursuant to 42 U.S.C. § 1983, against two New York State Department of Corrections and Community Supervision ("DOCCS") regional medical directors, APS Healthcare, Inc. ("APS"), and two APS employees for violating his Eighth Amendment rights by repeatedly denying his orthopedic referrals and, as a result, delaying adequate medical treatment for his shoulder injuries. *See generally* Dkt. No. 1, Compl.

On January 20, 2015, Plaintiff filed a Motion for Summary Judgment. Dkt. No. 107. On February 27, 2015, the APS and DOCCS Defendants responded with separate Cross-Motions for Summary Judgment. Dkt. Nos. 113 & 116. On March 23, 2015, Plaintiff filed a reply to each Cross-Motion. Dkt. Nos. 123 & 124.

## I. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file,

together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v.*

*Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## B.  Cross-Motion for Summary Judgment

When considering a cross-motion for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).  "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States*, 996 F.2d at 1461.

## C.  Material Facts

### 1. *State Action*

There are no issues of material fact.  APS is a private health services provider. Dkt. No. 113-9, Ex. E - Part 1, Danlias F. Howe, Esq., Decl., dated Sept. 2, 2014, at ¶ 4.  Since 2005, APS has been DOCCS existing utilization management service provider. Dkt. No. 113-9, Ex. E - Part 1, Howe Decl. at ¶ 7.  On July 1, 2010, DOCCS solicited proposals seeking a Statewide Utilization Management Program "to review and determine the medical necessity" of requested speciality care for all DOCCS inmates.  Dkt. No. 113-9, Ex. E - Part 1, Howe Decl., Ex. B, RFP, dated July 1, 2010,

at pp. 3 & 8. On December 1, 2010, APS renewed their contract with DOCCS. Dkt. No. 113-9, Ex. E - Part 1, Howe Decl. at ¶ 5; Dkt. No. 113-9, Ex. E - Part 1, Howe Decl., Ex. 1, APS Contract No. 161121, dated Dec. 1, 2010.

In order for an inmate to receive specialty care, an inmate's physician must electronically transmit a referral to an APS Nurse Reviewer,[1] who then reviews and assesses the referral against the nationally recognized Milliman Clinical Guidelines to determine whether the referral is an appropriate course of treatment for the inmate. Dkt. No. 107-4, Pl.'s Ex. I7, APS Technical Proposal, dated Aug. 26, 2010 & Ex. I8, APS Healthcare Authorization Diagram [hereinafter "APS Diagram"], dated Aug. 26, 2010; Dkt. No. 113-9, Ex. E - Part 1, Howe Decl. at ¶ 8. If the Nurse Reviewer approves the referral, the review process concludes. If the reviewer denies the referral, however, the inmate's medical case is then referred to an APS Medical Director to determine the appropriateness of the Nurse Reviewer's determination. Dkt. No. 113-9, Ex. E - Part 1, Howe Decl. at ¶¶ 10-11; Dkt. No. 107-4, Pl.'s Ex. I8, APS Diagram. An APS Medical Director can deny or approve the referral. If the referral is also denied by the APS Medical Director, that denial is transmitted to one of DOCCS Regional Medical Directors for review and a final decision. Dkt. No. 107-4, Pl.'s Ex.

---

[1] "APS [Nurse] Reviewers are care managers. They perform prior authorization concurrent and retrospective reviews under the supervision of the Medical Director, working collaboratively with DOCS medical personnel to develop appropriate and discharge plans. APS [Nurse] Reviewers are Registered Nurses with a valid unrestricted license in the state where the reviews are conducted." Dkt. No. 107-4, Pl.'s Ex. I7, Statewide Utilization Mgm't Program.

I8, APS Diagram. "APS staff members, including Nurse Reviewers and Medical Directors, are not required by contract to communicate with or meet with the inmate for purposes of their referral review." Dkt. No. 113-9, Ex. E - Part 1, Howe Decl. at ¶ 14.

At all times relevant to this action, Defendant Marika V. Winkler was an APS Nurse Reviewer and responsible for ensuring that referrals contained adequate information to conduct a review and, if the information was adequate, to ensure that any referral reflected the "most effective and [] appropriate level of care." Dkt. No. 113-13, Ex. F, Marika V. Winkler Decl., dated Oct. 3, 2014, at ¶¶ 1 & 4-6.

Defendant Jonathan S. Strenio is employed by APS as a Contractor Utilization Reviewer and Medical Director. Dkt. No. 113-14, Ex. G, Jonathan S. Strenio Decl., dated Sept. 2, 2014, at ¶ 5. In his capacity as Medical Director, Strenio reviews and evaluates the referrals that are denied by APS Nurse Reviewers. *Id.* at ¶¶ 6-7.

Plaintiff is an inmate in DOCCS custody. Plaintiff began to have shoulder pain in both shoulders in November 2006, after he was allegedly mishandled while being handcuffed by two correctional officers at Wende Correctional Facility. Dkt. No. 113-7, Ex. D - Part 1, James R. Mercer, Jr., Dep., dated Nov. 24, 2014, at p. 15. In December of 2007, an orthopedic surgeon operated on Plaintiff's right shoulder. *Id.* at pp. 15-16; Dkt. No. 116-2, Christina M. Misa Decl., dated Feb. 17, 2015, at ¶ 10.

While at Clinton Correctional Facility, from 2007 to 2009, Plaintiff received treatment for his shoulder pains, including x-rays, cortisone injections, MRI, bone scans, as well as other diagnostic tests, and he visited with an orthopedic physician. Dkt. No. 113-7, Ex. D - Part 1, Mercer Dep. at p. 24.

## 2. *First Claim: October 7, 2009*

On or about February 2009, Plaintiff was transferred to Wyoming Correctional Facility. Dkt. No. 113-7, Ex. D - Part 1, Mercer Dep. at pp. 25-26. While at Wyoming, Dr. DePerio[2] was Plaintiff's primary physician. *Id.* at p. 25. On October 7, 2009, Dr. DePerio referred Plaintiff to an orthopedic for an evaluation of his right shoulder. Dkt. No. 107-4, Pl.'s Ex. A1, Request and Rep. of Consul., dated Oct. 7, 2009. This referral was denied by an APS Nurse Reviewer and Strenio[3] because Plaintiff's right shoulder was evaluated by an orthopedic on October 2008 and, after reviewing Plaintiff's last MRI, determined that he did not have rotator cuff tears in his right shoulder. *Id.* In lieu of an orthopedic evaluation, they recommended that Plaintiff receive a formal regimen of physical therapy. Dkt. No. 107-4, Pl.'s Ex. A1, Request and Rep. of Consul.

Defendant Christina M. Misa was employed by DOCCS as a Regional Medical

---

[2] Dr. DePerio is not a defendant in this action.

[3] Defendant Strenio admits to denying the orthopedic requests that were submitted on the following dates: October 7, 2009, March 10, 2010, July 19, 2010, August 23, 2010, March 15, 2011, and August 16, 2011. Dkt. No. 113-14, Ex. G, Jonathan S. Strenio, dated Sept. 2, 2014, at ¶ 10 & Ex. 1, Referral Dec., at pp. 1, 4-5, 8-9, & 12.

Director and was responsible for "approving or denying requests made by medical providers at DOCCS facilities. [Her] determinations were made only after APS Healthcare, Inc. [] considered such request and made a recommendation in connection with it." Dkt. No. 116-2, Misa Decl. at ¶¶ 2-3. After reviewing the October 7, 2009 referral, Misa upheld APS's denial because Plaintiff had surgery on his right shoulder two years prior to the request. *Id.* at ¶ 10. Therefore, she agreed with APS that instead of an orthopedic evaluation, which would only be ordered as a precursor to surgery, Plaintiff should undergo a formal regimen of physical therapy and consult a physiatrist.[4] *Id.* at ¶ 9.

### 3. *Second Claim: March 10, 2010*

On March 10, 2010,[5] Dr. DePerio again requested an orthopedic evaluation for Plaintiff as his X-rays showed spurs and he was complaining of pain in both his shoulders. Dkt. No. 107-4, Pl.'s Ex. A5, Request and Rep. of Consul., dated Mar. 10, 2010. An APS Nurse Reviewer denied the request and Strenio upheld that denial. *Id.* Defendant Misa reviewed the request and upheld APS's denial because Plaintiff had

---

[4] A physiatrist is "a physician specializing in rehabilitation medicine." Dkt. No. 116-2, Cristina M. Misa Decl., dated Feb. 17, 2015, at ¶ 9.

[5] Dr. DePerio also submitted an orthopedic referral on January 20, 2010, which was also denied by APS, but Plaintiff did not list this date in his Complaint.

not completed physical therapy and had not yet been evaluated by a physiatrist.[6] Dkt. No. 116-2, Misa Decl. at ¶¶ 17-18 & 21.

On April 27, 2010, Plaintiff was evaluated by a physical therapist who recommended two sessions of physical therapy per week for four weeks. Dkt. No. 117, Joshua L. Farrell Decl., Ex. 5 at p. 1087, Request and Rep. of Consul., dated Apr. 12, 2010.[7] However, this treatment was discontinued after three physical therapy sessions because Plaintiff experienced a "lack of relief" from physical therapy.[8] Dkt. No. 116-2, Misa Decl. at ¶¶ 23-24; Dkt. No. 117, Joshua L. Farrell Decl., Ex. 5 at p. 1078, Request and Rep. of Consul., dated May 5, 2010.

### 4. *Third Claim: July 19, 2010*

On July 19, 2010, Dr. DePerio requested that Plaintiff visit with an orthopedic because he was complaining of pain in both shoulders for which he was receiving pain killers and physical therapy. Dkt. No. 107-4, Pl.'s Ex. A7, Request and Rep. Consul., dated July 19, 2010.

An APS Nurse Reviewer and Strenio denied this request, and again

---

[6] In general, DOCCS prefers non-invasive and conservative management of injuries over orthopedic surgery because of the inherent risks of surgery. Dkt. No. 116-2, Misa Decl. at ¶ 9.

[7] State Defendants' records are Bates stamped.

[8] While it appears that Plaintiff reported a lack of relief with his physical therapy sessions, there is no evidence that Plaintiff refused this treatment. In addition, it should be noted that during Plaintiff's first physical therapy session he described his pain as 7/10 at left shoulder and 4/10 at right shoulder and, on his third session, he described his pain at 5/10 at left shoulder and a 2/10 at right shoulder. Dkt. No. 116-2, Misa Decl. at ¶ 25.

recommended that Plaintiff first visit with a physiatrist.  *Id.*  Misa upheld APS's recommendation because Plaintiff had not been evaluated by a physiatrist and, because he did not appear to require surgical intervention and did not require an orthopedic consultation.  Dkt. No. 116-2, Misa Decl. at ¶ 31.

5.  *Fourth Claim: August 23, 2010*

On August 23, 2010, Dr. DePerio requested an orthopedic evaluation for Plaintiff because he was "complaining of progressive pain of both shoulders w/ difficulty on abduction.  Has received [physical therapy] w/o much improvement and now needs an orthopedic consultation and not a physiatrist."  Dkt. No. 107-4, Pl.'s Ex. A9, Request and Rep. of Consul., dated Aug. 23. 2010.  An APS Nurse Reviewer and Strenio denied this request and recommended that Plaintiff visit a  physiatrist.  *Id.* Misa upheld APS's denial and recommendation because "Plaintiff needed to be evaluated by a physiatrist prior to an orthopedic evaluation."  Dkt. No. 116-2, Misa Decl. at ¶¶ 36-37.

On December 3, 2010, Plaintiff was evaluated by a physiatrist and received bilateral shoulder injections with steroids and lidocaine.  Dkt. No. 117, Joshua L. Farrell Decl., Ex. 7 at p. 0054, Request and Rep. of Consul., dated Nov. 10, 2010.

On or about January 18, 2011, Plaintiff was transferred to Gowanda Correctional Facility from Wyoming Correctional Facility.  Dkt. No. 113-7, Ex. D - Part 1, Mercer

Dep. at p. 77. On January 31, 2011, x-rays revealed that Plaintiff was suffering from degenerative osteoarthritis of the shoulders. Dkt. No. 116-2, Misa Decl. at ¶ 42; Dkt. No. 117, Joshua L. Farrell Decl., Ex. 7 at p. 1055, Request and Rep. of Consul., dated Jan. 27, 2011.

### 6. *Fifth Claim: March 15, 2011*

On March 15, 2011, Plaintiff's physician at Gowanda requested that Plaintiff visit with an orthopedic physician. Dkt. No. 107-4, Pl.'s Ex. A11, Request and Rep. Consul., dated Mar. 15, 2011. An APS Nurse Reviewer and Strenio denied this request and recommended that Plaintiff submit to additional physical therapy as it could prove beneficial in light of his December shoulder injections. *Id.* Misa upheld APS's denial and recommendation because "the anti-inflammatory effects of the shoulder injections Plaintiff received in December 2010 could [have made] this new round of physical therapy more effective in improving Plaintiff's symptoms." Dkt. No. 116-2, Misa Decl. at ¶ 46.

On or about March 20, 2011, Plaintiff was transferred to Livingston Correctional Facility. Dkt. No. 113-7, Ex. D - Part 1, Mercer Dep. at pp. 82-83. While there, Plaintiff had an ultrasound, attended eight weeks or eight sessions of physical therapy, was provided with heating pads, and prescribed Ultram and then Neurotin. *Id.* at pp. 84-85 & 90.

*7. Sixth Claim: August 16, 2011*

On August 16, 2011, Dr. DePerio submitted a request for an orthopedic appointment for Plaintiff. Dkt. No. 107-4, Pl.'s Ex. A13, Request and Rep. Consul., dated Aug. 16, 2011. The request stated, in part, that Plaintiff was "[forty-six years old] w/injury to both shoulders years ago. Had [right shoulder] acromioplasty in 2009. Persists to complain of pain on both shoulders & has had physiatrist & physical therapy but no improvement . . . ." *Id.* An APS Nurse Reviewer and Strenio denied this request and recommended that Plaintiff follow-up with a physiatrist. *Id.* Defendant Gerald Amatucci, who at the time was employed by DOCCS as a Regional Medical Director and responsible for approving and denying requests made by medical providers at DOCCS facilities, upheld APS's denial and recommendation to defer the orthopedic evaluation until after Plaintiff followed up with a physiatrist. Dkt. No. 116-3, Gerald Amatucci Decl., dated Feb. 20, 2015, at ¶¶ 1, 3, & 7-8. Defendant Amatucci upheld the recommendation because he concluded that Plaintiff did not need orthopedic surgery as he was suffering from degenerative osteoarthritis for which surgery is "appropriate only in the later stages of the condition," and Plaintiff's condition had not yet progressed to that point; and as a result, Amatucci "wanted to

exhaust all non-invasive" treatment before approving an orthopedic evaluation as it.[9] *Id.* at ¶¶ 9-10.

On October 25, 2012, Plaintiff was examined by an orthopedic physician, Compl. at p. 6, and on February 5, 2013, Plaintiff underwent surgery to repair the rotator cuff tears in his right shoulder. Dkt. 107-4, Pl.'s Ex. E1, Operative Rep., dated Feb. 5, 2013. On August 29, 2014, Plaintiff was again examined by an orthopedic physician who determined that he will eventually need a total shoulder replacement. Dkt. No. 107-4, Pl.'s Ex. E5, Request and Rep. of Consul, dated July 1, 2014.

## D. State Action

Section 1983 provides that "[e]very person who, under color of any [state] statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. A plaintiff bringing suit pursuant to section 1983 is required to show state action. *Tancredi v. Metropolitan Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003). A plaintiff complaining that a private entity violated

---

[9] Defendant Amatucci explains that he deferred the surgery for a non-invasive option because "[the] risks associated with surgery at the time outweighed the benefits." Dkt. No. 116-3, Gerald Amatucci Decl., dated Feb. 20, 2015, at ¶ 9.

their constitutional rights must demonstrate that there is such a close nexus[10] between the State and the challenged action that the constitutional violation is fairly attributable to the State.[11] *Id.*; *Grogan v. Blooming Grove Volunteer Ambulance Corps.*, 768 F.3d 259, 264 (2d Cir. 2014). Accordingly, there are several ways of establishing state action:

> State action may properly be found where the state exercises "coercive power" over, is "entwined in [the] management or control" of, or provides "significant encouragement, either overt or covert" to, a private actor, or where the private actor "operates as a willful participant in joint activity with the State or its agents," is "controlled by an agency of the State," has been delegated a "public function" by the state, or is "entwined with governmental policies."

*Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d at 312 (citations omitted).

The Court begins its state action inquiry "by identifying the specific conduct of which the plaintiff complains." *Id.* (quoting *American Manufactures Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)); *Blum v. Yaretsky*, 457 U.S. 991, 1003 (1982) ("Faithful adherence to the state action requirement of the Fourteenth Amendment

---

[10] The "close nexus" test "assure[s] that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) (quoting *Blum v. Yaretskly*, 457 U.S. 991, 1004 (1982)) (emphasis in original).

[11] "What is fairly attributable [to the government] is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." *Horvath v. Westport Library Ass'n*, 362 F.3d 147, 151 (2d Cir. 2004) (quoting *Brentwood Acad. v. Tennessee Secondary Sch.. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001)).

requires careful attention to the gravamen of the plaintiff's complaint.").

Here, Plaintiff complains that APS was deliberately indifferent to his medical needs in violation of the Eighth Amendment when two of its employees — Winkler and Strenio — repeatedly denied his orthopedic referrals. *See generally* Compl. The Court notes that it is precisely DOCCS's obligation to review an inmate's medical file for specialty care which has been contracted to APS.

The Supreme Court has held that physicians employed pursuant to a contract for the purposes of providing medical care for inmates are state actors. *West v. Atkins*, 487 U.S. 42, 55 (1988); *Grogan v. Blooming Grove Volunteer Ambulance Corps.*, 768 F.3d at 265 (citing *West v. Atkins*, for the proposition that courts may find state action when private parties provide medical care to prison inmates). While there are no bright line rules for determining whether a private entity is a state actor, in light of *Sykes v. McPhillips*, 412 F. Supp. 2d 197, 201 (N.D.N.Y. 2006) (citing, *inter alia*, *West v. Atkins,* 487 U.S. at 55), the Court finds it highly relevant that APS engaged in a contractual relationship with DOCCS to review inmate medical records.[12]

Here, APS proclaims that it is a health service provider and has an express

---

[12] Although the APS Defendants contend that they merely provided preliminary determinations and DOCCS was the final reviewer of any denial, the Court finds that this indeed was a health service despite DOCCS's ability to override such denials. It is a matter of common sense that "prison and jails are inherently coercive institutions that for security reasons must exercise nearly total control over their residents' lives and the activities within their confines[.]" *Sykes v. McPhillips*, 412 F. Supp. 2d 197, 201 (N.D.N.Y. 2006) (quoting *West v. Atkins*, 487 U.S. 42, 55-56 (1988)). Thus, it is unsurprising to the Court that DOCCS reserves the right to approve a referral despite a previous denial issued by APS. As a result, the Court is unpersuaded by the APS Defendants' semantic argument that they only provided "preliminary" denials rather then outright denials.

contract with DOCCS to review inmate medical records to determine whether a referral submitted by an inmate's facility physician is an appropriate course of treatment. APS Nurse Reviewers and APS Medical Directors base their determination on "their own medical judgment." Dkt. No. 113-9, Ex. E - Part 1, Howe Decl. at ¶ 16. To ensure that an inmate is receiving an appropriate level of care, APS Medical Directors, in addition to reviewing the inmate's medical file, at times, will contact the "referring physician to discuss the request in more detail[.]" *Id.* Based on these facts, the Court finds that APS collaborated with DOCCS to determine appropriate care for inmates and did so with state authority.

### E. Statute of Limitations

Defendants argue that Plaintiff's First and Second Claims are barred by the statute of limitations. "The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (citation omitted).

"The continuing violation doctrine is an exception to the normal knew-or-

should-have known accrual date." *Thompson v. Bellevue Hosp.,* 2011 WL 4369132, at *8 (N.D.N.Y. Aug. 29, 2011) (quoting *Shomo v. City of New York*, 579 F.3d at 181). The Second Circuit has held that the continuing violation doctrine can toll a plaintiff's Eighth Amendment medical indifference claim. *Shomo v. City of New York*, 579 F.3d at 182 ("We agree that the continuing violation doctrine can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs."). To assert the continuous violation doctrine, Plaintiff must allege the (1) existence of an "ongoing policy of deliberate indifference to his or her serious medical needs" and (2) "some acts in furtherance of the policy within the relevant statute of limitations period." *Id.*

Here, the Court finds that the continuous violation doctrine saves Plaintiff's First and Second Claim. Plaintiff filed his Complaint on July 13, 2013.[13] Compl. at p. 12. According to the Complaint, on October 7, 2009, Defendants APS, Winkler, Strenio, and Misa denied Plaintiff's orthopedic referral; and, on March 10, 2010, Defendants APS, Winkler, and Misa again denied Plaintiff's orthopedic referral.[14] While it is true that these two dates are not within the statutory period, the subsequent claims are

---

[13] The Second Circuit has held that due to the unique difficulties faced by incarcerated *pro se* litigants, a prisoner's pleading is deemed to be properly filed at the time he or she hands the papers to the prison authorities for transmittal to the court. *Dory v. Ryan*, 999 F.2d 679, 681-82 (2d Cir. 1993), *modified on reh'g*, 25 F.3d 81 (2d Cir. 1994). It is presumed that a prisoner handed the pleading to the prison guard on the date he signed the complaint. *Shaw v. Superintendent Attica Corr. Fac.*, 2007 WL 951459, at *3 n.3 (N.D.N.Y. Mar. 28, 2007).

[14] Plaintiff did not list Strenio in his Second Claim. Dkt. No. 1, Compl., at p. 7.

within the statutory period and consist of the same Defendants for the same alleged unconstitutional conduct. *See Thompson v. Bellevue Hosp.,* 2011 WL 4369132, at *9 (emphasizing that a plaintiff needs to show that the specific defendants committed at least one wrongful act within the statutory time period in order to invoke the continuous violation doctrine).[15] Thus, the Court will consider all of Plaintiff's claims.

## F.  Personal Involvement

As an initial matter, the Court finds that Plaintiff has failed to demonstrate that Defendant Winkler was in fact the Nurse Reviewer who denied his orthopedic referrals.  The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement."  *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d at 874 & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual

---

[15] The Court is unpersuaded by APS Defendants' argument that the continuous violation doctrine is inapplicable to the case at bar because Plaintiff did not allege a policy of deliberate indifference.  While it is true that Plaintiff, who is proceeding *pro se*, did not include a recitation of the continuous violation doctrine in his Complaint, the Complaint suggests that APS had a policy of rejecting referrals, which allegedly resulted in Plaintiff's denial of medical care.  In addition, primarily because we agree with the APS Defendants that the purpose of the doctrine is to screen out unrelated and discrete acts of unconstitutional conduct, we find that the Plaintiff has survived the test as all of Plaintiff's claims involve the same activity — denial of his orthopedic referrals.

actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Here, Plaintiff claims that he can identify Winkler as the Nurse Reviewer who denied his various orthopedic referrals by her initials listed on the orthopedic referrals. Dkt. No. 113-7, Ex. D - Part 1, Mercer Dep. at p. 88. However, Plaintiff has failed to explain to the Court how he is able to decipher Winkler's initials on the orthopedic denials. In addition, Defendant Winkler does not admit nor deny that she was the Nurse Reviewer who denied his orthopedic referrals. *See generally* Dkt. No. 113-13, Ex. F, Marika V. Winkler Decl., dated Oct. 3, 2014. As a result, Plaintiff has failed to establish that Winkler was personally involved in any wrongdoing. Thus, the Court recommends **dismissing** Defendant Winkler from this action.

### G. Inadequate Medical Care

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd,* 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2)

deliberate indifference. *Farmer v. Brennan,* 511 U.S. 825, 834–35 (1994); *Hathaway v. Coughlin ("Hathaway I"),* 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals' daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d at 702 (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992)).

The "seriousness inquiry is narrower" in cases where "the prisoner is receiving ongoing treatment and the offending conduct is an unreasonable delay or interruption in that treatment." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006) (citing *Smith v. Carpenter,* 316 F.3d 178,185 (2d Cir. 2003)). In such cases, courts "focus [] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* The question becomes whether delaying treatment subjected Plaintiff to any serious risk of harm. To that end, the Second

Circuit has instructed us that "the severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances." *Smith v. Carpenter,* 316 F.3d at 187. In this regard, "the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.* Determining whether the inadequacy/delay presents a sufficiently serious risk "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* (citing *Helling, v. McKinney,* 509 U.S. 25, 32–33 (1993)).

1. *Serious Medical Need*

Here, Plaintiff suffered from chronic pain in both shoulders and had difficulty moving his right shoulder. Moreover, Plaintiff's shoulder pain was sufficiently serious to warrant, *inter alia*, physical therapy, x-ray of shoulder joint, pain killers, a physiatrist, shoulder injections, and, on numerous occasions, his primary physician recommending that he visit with an orthopedic physician. Thus, Plaintiff has established that his shoulder pain is an objectively serious medical condition for purposes of the Eighth Amendment. *See Vail v. Lashway*, 2014 WL 4626490, at * 12 (N.D.N.Y. Sept. 15, 2014) (finding a shoulder injury to be a serious medical condition on summary judgment); *Flemming v. Wright*, 2013 WL 4804493, at *10 (N.D.N.Y.

Sept. 9, 2013) (finding that reduced shoulder mobility accompanied by severe pain can amount to a serious medical need) (citing to *Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006)).

## 2. *Deliberate Indifference*

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301–03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir.1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted). Although a delay in providing necessary medical care may in some cases constitute deliberate

indifference, such a classification is reserved "for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life threatening and fast degenerating condition for three days; or delayed major surgery for over two years." *Freeman v. Stack,* 2000 WL 1459782, at *6 (S.D.N.Y. Sep. 29, 2000).

### a. *First Claim-Fifth Claim*

Here, Plaintiff argues that the various Defendants acted with deliberate indifference when they delayed his orthopedic examination by repeatedly denying his orthopedic referrals. The Court disagrees.

With respect to the APS Defendants and Defendant Misa, Plaintiff fails to demonstrate that they were deliberately indifferent to his medical needs. To the contrary, the APS Defendants reviewed Plaintiff's medical record and consistently recommended non-invasive treatment — such as physical therapy and consultations with a physiatrist — as Plaintiff had underwent surgery for his right shoulder and because surgery carried inherent risks. For instance, on or about March 15, 2011, the APS Defendants and Misa had ordered a second round of physical therapy only after Plaintiff received injections in his shoulder as they concluded that physical therapy may prove beneficial in conjunction with the recent shoulder injections; such a recommendation is evidence of Misa's and APS Defendants' review of Plaintiff's medical record and effort to manage his shoulder pain with minimal risk to his physical

well-being.  As a result, their actions, with regard to Plaintiff's First Claim through Fifth Claim, do not rise to the recklessness standard necessary to prove deliberate indifference under § 1983.

### b. *Sixth Claim*

With respect to Defendant Amatucci, the Court does not find that he acted with deliberate indifference in denying Plaintiff's August 16, 2011 orthopedic request. Defendant Amatucci denied the request because, at the time, Plaintiff's records did not indicate a need for orthopedic surgery and the risks associated with additional surgery outweighed the benefits of continuing treatment with a physiatrist.  Because the Court is not a medical review board, we will not second guess Amatucci's determination to delay an orthopedic evaluation in the hopes of seeking an effective alternative to Plaintiff's shoulder pain. *Freeman v. Strack*, 2000 WL 1459782, at *6; *Washington v. Westchester Cnty. Dep't. of Corr.*, 2014 WL 1778410, *8 (S.D.N.Y. Apr. 25, 2014) (medical providers have wide discretion in treating inmate patients and their determinations "are given a presumption of correctness") (quoting *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311-12 (S.D.N.Y. 2001)). However, we note that Amatucci's and APS's decision to recommend a physiatrist may have been medical negligence as the Plaintiff had already been examined by a physiatrist; but even so, negligence does not equate to criminal recklessness. *Crique*

*v. Magill*, 2013 WL 3783735, *3 (S.D.N.Y. July 19, 2013) (citing to *Farmer v. Brennan*, 511 U.S. at 835). Moreover, there is no evidence that Amatucci, or the APS Defendants, deliberately delayed the orthopedic evaluation as a form of punishment, ignored a time-sensitive condition, or excessively delayed major surgery.

Thus, the Court recommends **denying** Plaintiff's Motion for Summary Judgment and **granting** Defendants' Cross-Motions for Summary Judgment.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Motion for Summary Judgment (Dkt. No. 107) be **DENIED in its entirety** and Defendants' Cross-Motions for Summary Judgment (Dkt. Nos. 113 & 116) be **GRANTED in its entirety**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72

& 6(a).

Date:  June 25, 2015
        Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge